NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JULIAN GARCIA,  :
:
Plaintiff, :
: **Civil Action No. 08-1725 (SRC)**
v. :
: **OPINION**
CITY OF NEWARK, et al., :
:
Defendants. :
:
:

**CHESLER**, District Judge

     Presently before the Court is the motion by Defendant City of Newark ("the City" or "Defendant") for summary judgment [docket entry 106]. Plaintiff Julian Garcia ("Plaintiff") has opposed the motion. This Court has reviewed the papers filed by the parties in connection with the instant motion for summary judgment and rules based on those submissions, and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, Defendant's motion for summary judgment will be granted in part and denied in part.

**I.    BACKGROUND**

     In this civil rights action, Plaintiff Julian Garcia seeks damages, based upon claims that nine members of the Newark Police Department violated his constitutional rights in connection with their use of excessive force and inadequate identification procedures in arresting him.

Plaintiff further contends that the City of Newark is liable for its established practice and custom of condoning such police misconduct. The case arises out of two separate arrests of Plaintiff that occurred on May 9, 2007 and July 3, 2007. Plaintiff alleges that on May 9, 2007, he was on the porch of 178 Dickerson Street ("the Downey residence") socializing with DeWayne and Tamika Downey and others when numerous police officers, including defendants Michael DiFabio ("DiFabio") and Anthony Bagnano ("Bagnano"), responded to the Downey residence on a dispatch call of a man with a gun. According to the Plaintiff, when Mrs. Downey inquired whether officers had a search warrant, defendant DiFabio threw her to the ground, violently handcuffed her, and forcefully put his knee in her back. While DiFabio was purportedly "attacking" Mrs. Downey, Plaintiff stated "get his badge number," prompting DiFabio to allegedly throw him to the ground, grab him by the throat and choke him, and scream "I'll kill you." After being choked, Plaintiff contends that DiFabio kicked him several times while other defendant officers sat by and watched. At some point defendants DiFabio and Bagnano performed an identification check and informed Plaintiff that he had an outstanding warrant and was also being charged with resisting arrest, obstruction of justice, and drinking in public. Plaintiff testified at his deposition that he was "sucker punched" in the face by Bagnano on the way to the police precinct because Plaintiff's cell phone kept going off.

Plaintiff was released on May 22, 2007 after it was determined that the outstanding warrant was for his brother who used Plaintiff's name as an alias. Both Plaintiff and the Downeys filed complaints with the Internal Affairs Unit of the Newark Police Department in connection with the May 9, 2007 incident. Defendant James Lopez ultimately performed the investigation and closed it out as "not sustained."

2

On July 3, 2007, Plaintiff was again arrested and charged with robbery based on statements given to defendant officers by two witnesses, Eric Barahona and Lisa Eggleston. Both witnesses also identified Plaintiff in separate photo arrays. Based on the identifications, Plaintiff was arrested. He was detained for four months and then released from custody on October 30, 2007, after a grand jury refused to indict him on the robbery charges.

Plaintiff claims that the defendant officers used excessive force against him while making an arrest. As to the City of Newark, Plaintiff argues that his civil rights were violated through the City's custom of tacitly authorizing its police officers to use excessive force - by permitting a situation to exist where police officers are improperly trained and are not disciplined or subject to review for their misconduct - and that this violation resulted in his personal injuries. Plaintiff further contends that the City of Newark's police investigation procedures, namely the use of photo array rather than in-person identification, are overly suggestive and reckless and led to his false arrest.

II.   **DISCUSSION**

  A.   **Summary Judgment Standard**

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*,

223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  *See Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 247-48.  The Supreme Court has held that Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  A properly supported motion for summary judgment cannot be defeated by "the mere existence of a scintilla of evidence" in favor of the non-moving party's claims. *Anderson*, 477 U.S. at 252.  Instead, "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.*; *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but "must exceed the 'mere scintilla' threshold").

B.     **Section 1983 Claims Against The City of Newark**

Plaintiff claims that the City of Newark is liable for his constitutional deprivations

because of the customs and practices it condones regarding Newark Police Department procedures. Because Plaintiff's claims are not based on ordinary negligence or tort principles but on a federal civil rights statute, the City is not liable under the doctrine of respondeat superior for the misconduct of its police. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). When a suit against a municipality is based on 42 U.S.C. § 1983, the municipality "can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690-91 (1978). Under §1983 a municipality is only liable "... when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury ..." *Id*. at 694; *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1295-96 (3d Cir. 1997).

    The Court's reasoning in *Monell* has created a "two-path track to municipal liability," based on either a municipal policy or custom that resulted in a constitutional violation. A "policy" arises when a "decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official proclamation, policy, or edict." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996). In contrast, a "custom" is a course of conduct that, although not specifically authorized by law, reflects "practices of state officials [that are] so permanent and well-settled as to virtually constitute law." *Id*. Custom, on which Plaintiff relies in this case, may be established by "evidence of knowledge and acquiescence." *Id*.

    In addition, plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

5

In order to do this, "plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Id*. at 851.

### 1. Custom of Condoning Use of Excessive Force by Police Officers

In *Beck v. Pittsburgh*, the Third Circuit considered the question of when "an aggrieved citizen adduce[s] sufficient evidence to a jury from which it can infer that a municipality has adopted a custom of permitting its police officers to use excessive force in the performance of their duties." *Beck*, 89 F.3d at 967. Distinguishing cases in which an alleged custom is supported only by "mere statistics," the *Beck* court noted that the plaintiff offered proof of five "actual written civilian complaints of similar nature," containing specific information pertaining to the use of excessive force and verbal abuse by defendant officer. *Id*. at 973. The Court further observed that all but one of the complaints had been investigated and transmitted through the police department chain of command to the Chief of Police and, because the Chief of Police has "final, unreviewable discretion to make a decision or take an action," he is a policymaker who had knowledge of the complaints. *Id*. It concluded that "[w]ithout more, these written complaints," which arose "in a narrow period of time and were of a similar nature," were "sufficient for a reasonable jury to infer that the Chief of Police of Pittsburgh and his department knew, or should have known," of the defendant officer's "propensity for violence when making arrests." *Id*. The Court reasoned that it was "logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future." *Id*. at 974-75.

As in *Beck*, the proof here includes specific evidence of actual written civilian complaints against individual defendant police officers. In the 11 years prior to the incidents at issue in this

case, defendant DiFabio alone had been the subject of 35 citizen complaints for excessive force and false arrest. In addition, six of the individual defendants together account for more than 55 complaints of similar misconduct, a per-officer average of nearly twice that of the officer in *Beck*. Further, as in *Beck*, the Police Director is a policymaker since he alone has the authority to "make rules and regulations," to "establish procedures for the hearing and determination" of disciplinary violations, and to "set operating and administrative policies." (Newark Police Dept. Rules & Regulations at 1:3.4, Black Cert. Ex. 55.) As mandated by the procedures governing the Office of Internal Affairs, the Director and his office are to be kept closely apprised of the status and disposition of all internal affairs investigations, indicating his knowledge of the complaints against the defendant officers. (Newark Police Dept. General Order at 6, Black Cert. Ex. 56.)

  In addition, before the Court is the expert testimony of D.P. Van Blaricom (hereinafter "Blaricom") who opined that "it is the custom, practice and policy of the [Newark Police Department] to stringently discipline any misconduct against the organization itself but pay little or no attention to complaints from citizens, especially those regarding use of excessive force." (Report of Plaintiff's Police Practices Expert at 9, Black Cert. Ex. 39.) In forming his opinion, Blaricom evaluated the disciplinary records of defendant officers and concluded that despite numerous complaints of use of excessive force against them, none of them were sustained. Blaricom additionally found a pattern where administrative complaints made against defendant officers were routinely sustained while citizen complaints were almost invariably rejected. Furthermore, the internal affairs investigator in the current case, James Lopez, stated that he has never sustained an excessive force allegation unless the Prosecutor had already found sufficient evidence to bring a criminal charge, in spite of Police Director Garry McCarthy's testimony that

7

the standard of proof for evaluating an allegation of police misconduct is "preponderance of evidence."

At this point in the proceedings, where Plaintiff's expert's opinion was not challenged under a *Daubert* motion and, in light of the Third Circuit decision in *Beck*, Defendant's motion for summary judgment on the claim that the City of Newark has a custom of condoning the use of excessive force by police officers must be denied.

### 2. Pattern of Using Inadequate Identification Procedures

The City of Newark permits identification procedures - procedures that led to Plaintiff's July 3, 2007 arrest - which allow police officers to obtain warrants and arrest individuals based on photo identifications alone.  Plaintiff claims that such a practice is unconstitutional because a lack of any confirmatory identification procedure fails to protect people against suggestive or faulty identifications.  The Supreme Court has recognized that "improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." *Simmons v. United States*, 390 U.S. 377, 383 (1968).  Despite the risk of misidentification, the Supreme Court held that this procedure "has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." *Id*. at 384.  Any danger that "use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." *Id*.  As such, the Supreme Court has required that each case be considered on its own facts and that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that

ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id*.

In his Complaint, Plaintiff makes a generalized argument that photo identification alone, without any confirmatory identification procedure such as a live line-up, fails to protect individuals against inaccurate identifications, creating an atmosphere of illegal and unconstitutional behavior. Such a contention fails in the face of the Supreme Court's unwillingness, either in the exercise of its supervisory power over federal courts or as a matter of constitutional requirement, to prohibit an accused's initial identification by photograph. Even Plaintiff's own expert concedes that a photo array has been universally adopted by American law enforcement agencies as a lawful means of suspect identification. Plaintiff has not put forth any argument or evidence suggesting that the photo identification procedure leading to his arrest and four-month detainment was so impermissibly suggestive that it gave rise to his misidentification. As such, summary judgment is granted on the claim that the City of Newark endorses a policy of inadequate identification procedures.

### 3. Custom of Substandard Police Training

Plaintiff additionally contends that the City of Newark is liable for his injuries because of its failure to properly train the defendant officers. The inadequacy of police training may only serve as the basis for §1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1988). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983."

9

*Id*. at 389.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, nor will it suffice to prove that an injury or accident could have been avoided if an officer had better or more training.  *Id*. at 390-91.  "Adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id*. at 391.  For liability to attach, the identified deficiency in a city's training program must be closely related to the ultimate injury.  *Id*.  "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983." *Id*.

In his opposition papers, Plaintiff has not submitted any evidence as to how Newark police officers are instructed with regard to the use of force and effectuating arrests, nor has he explained why such training is inadequate.  Plaintiff has also neglected to proffer a Newark Police Department training manual or expert witness on the subject.  Because Plaintiff has failed to provide any evidence of deficiencies in the training officers receive or examples of training needed, it cannot be said that the need for more or additional training is so obvious as to constitute deliberate indifference on the part of the City.  As such, summary judgment will be granted in favor of Defendant on the claim that the City of Newark inadequately trains its police officers.

    **C.**    **Applicability of The City of Newark's Summary Judgment Motion to Individual Defendants**

Defendants Frank Cordero and Anthony Williams have indicated that they join in the City of Newark's motion for summary judgment and requested that the Court make any ruling on the motion applicable to them.  Because the City of Newark's sole basis for moving is under the *Monell* standard of municipal liability, the matters decided on the City's motion, as discussed

above, are inapplicable to the individual officers.  The Court, therefore, denies their motions for summary judgment.

**III.    CONCLUSION**

For the foregoing reasons, this Court adjudicates the motion for summary judgment at bar as follows: It grants Defendant summary judgment as to its §1983 claims based on the City of Newark's use of inadequate identification procedures and on its inadequate police training.  The Court denies the City of Newark's motion as to the claim that the City has a custom of tolerating excessive use of force by its police officers.  The Court denies Defendants Anthony Williams' and Frank Cordero's motions for summary judgment.

An appropriate form of order will be filed together with this Opinion.

  s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

DATED: February 16, 2011